**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| WAYNE LEO SAVOY, | * |
|    Plaintiff, | * |
| v. | *   Civil Action No. GLR-14-1853 |
| WARDEN FRANK BISHOP, et al., | * |
|    Defendants. | * |

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 16). The Motion is ripe for disposition. Upon consideration of the Motion and the Opposition thereto (ECF No. 20), the Court finds no hearing necessary. See Local Rule 105.6 (D.Md. 2014). For reasons stated below, the Motion shall be granted.

## I.   BACKGROUND[1]

In partnership with America's VetDog Veteran's K-9 Corps and Guide Dogs Foundation ("Vet Dog Program"), the Western Correctional Institution ("WCI") offers a program for prison inmates to raise, socialize and teach puppies basic command skills. On May 29, 2013, Plaintiff Wayne Leo Savoy filed an administrative remedy procedure grievance ("ARP") against WCI's Defendant Lieutenant J. McFarland after McFarland informed Savoy that inmates in wheelchairs were excluded from participating in the Vet Dog Program. On June 4, 2013, WCI personnel received Savoy's ARP. The ARP was dismissed on June 10, 2015, based upon Savoy's attempt

---

[1] Unless otherwise noted, the following facts are taken from the Complaint and the parties' briefings on the Motion. The facts are viewed in a light most favorable to Plaintiff.

to file a "class action" grievance on behalf of other inmates.  After refusing to sign the ARP, McFarland had correctional officers harass Savoy by refusing to open his cell door for work and then claiming he refused to work, and by threatening to move him to another WCI housing unit used to "intimidate inmates into signing off on their ARPs" because it is known to be "full of [violent] gang members."

On June 14, 2013, Savoy submitted another ARP, contending that he was harassed and intimidated by Defendant COII B. McKenzie for submitting ARPs written about Defendant Sergeant John Shaver and McKenzie.  On July 7, 2013, after again refusing to sign the ARP, Savoy was moved out of his handicap cell to a WCI housing unit that does not comply with the Americans with Disabilities Act ("ADA"), in an effort to "free up single cell beds that were being designated for use by the Vet Dog Program."[2]  On July 8, 2013, Savoy withdrew his June 14, 2013 ARP grievance.[3]

On July 13, 2013, he seriously burned himself when spilling a bowl of hot water over his right thigh while heating his food in the microwave.  Savoy then filed an ARP, claiming he would not have been injured if he had not been moved out of Housing Unit One or the recreation hall had been in compliance with the ADA, as the microwave and hot pot were "up high" and not readily accessible to wheelchair-bound inmates.  The ARP was investigated by Defendant Jeff Nines, who spoke to McKenzie and a member of the medical department, reviewed the policies for the recreation hall and examined reports concerning Savoy's medical treatment.  Nines found

---

[2] Savoy was one of approximately six inmates moved during the period to accommodate the newly instituted program.  (ECF No. 16-3).

[3] Savoy filed additional ARPs on June 12 and July 11, 2013, claiming that McKenzie refused to provide him a requested ARP form on June 12, 2013, and complaining about McKenzie's penchant for having inmates moved if they write an ARP grievance.  The ARPs were investigated and dismissed on August 5 and August 13, 2013.  (ECF No. 16).

that the microwave table was mounted forty inches from the floor at the time of the incident. He further noted that a nurse had reported that Savoy suffered from blisters and inflamed thigh and ankle areas. Nines concluded that the height of the table was in compliance with ADA standards and recommended that the ARP be dismissed.

On July 13 and July 17, 2013, Savoy filed ARPs complaining about being moved to Housing Unit Two on July 7, 2013, which he alleged was in retaliation for filing earlier ARPs against McFarland. The ARPs were dismissed on July 24 and July 25, 2013. On June 9, 2014, Savoy initiated this action pursuant to 42 U.S.C. § 1983 (2012), requesting compensatory, punitive, and miscellaneous damages.

## II.   DISCUSSION

**A. Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

"When matters outside the pleading are presented to and not excluded by the court, the 12(b)(6) motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260-61 (4th Cir. 1998). Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the

moving party demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

In reviewing a motion for summary judgment, the Court must draw all justifiable inferences in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48.

A "material fact" is one that might affect the outcome of a party's case. Id. at 248; see JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265.

Here, because the Court will consider matters outside of the pleading, Defendants' Motion will be construed as a Motion for Summary Judgment.

**B. Analysis**

   **1. Administrative Exhaustion**

Defendants raise an affirmative defense claiming that Savoy's claims are subject to dismissal because he did not exhaust his administrative remedies by appealing to the Inmate Grievance Office ("IGO"). The record shows that Savoy did grieve claims regarding officer

harassment and his unit transfer to the IGO, but did not appeal the denial of his ARP regarding the refusal to place him in the Vet Dog Program to the IGO.

The Prisoner Litigation Reform Act ("PLRA") provides in pertinent part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e.  The statute's exhaustion provision requires inmates to pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. Chase v. Peay, 286 F.Supp.2d 523, 530 (D.Md. 2003), aff'd, 98 F.App'x 253 (4th Cir. 2004).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process.  Chase, 286 F.Supp.2d at 530; see Booth v. Churner, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002) (stating prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

In Maryland, filing a request for administrative remedy with the warden of the prison is the first of three steps in the ARP process.  The Division of Correction's Directive on Administrative Remedy Procedures, DCD # 185-002 outlines the ARP process.  The ARP must be filed within 30 days of the date on which the incident occurred, or 30 days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later.  DCD # 185-002, § VI.L.3.  If the request is denied, a prisoner has thirty calendar days to file an appeal with the Commissioner of Correction.  DCD # 185-002, VI. M.1.  If the appeal is

denied, the prisoner has thirty days to file a grievance with the Executive Director of the Inmate Grievance Office.  See Md. Code Ann., Corr. Servs. §§ 10-206, 10-210 (West 2015); see also Md. Code Regs. 12.07.01.03 (2015); DCD # 185-002, § VI.N.1.  In order to show administrative exhaustion, the plaintiff must demonstrate that he appealed his grievance to the Inmate Grievance Office through all three steps in the administrative process.

Administrative remedies must, however, be available to the prisoner and this Court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007); see Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008); see also Blake v. Ross, 787 F.3d 693, 700-01 (4th Cir. 2015).

Savoy states that he was forced to withdraw his ARPs under duress.  The PLRA exhaustion statute "requires that prisoners exhaust only available remedies." Tuckel v. Grover, 660 F.3d 1249, 1252 (10th Cir. 2011).  "[A]n administrative remedy is not 'available' under the PLRA if 'prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of [the] administrative remedy.'" Id. (quoting Little v. Jones, 607 F.3d 1245, 1250 (10th Cir. 2010)). District courts must, therefore, "ensure that any defects in exhaustion [are] not procured from the action or inaction of prison officials." Tuckel, 660 F.3d at 1252 (quoting Aguilar-Avellaveda, 478 F.23d at 1225).  Duress undertaken by prison officials may render administrative remedies unavailable.  Accordingly, the Court finds Defendants have not demonstrated Plaintiff failed to exhaust his available administrative remedies.

   2.  **42 U.S.C. § 1983 Claim**

The Court finds that Savoy's § 1983 claim that he was "discriminated, harassed, threatened and retaliated against for exercising his constitutional[ly] protected right to seek

redress of grievances by state officers" fails because it is not colorable under § 1983. The inmate alleging retaliation "[b]ears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision . . . ." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996). Savoy has no constitutional right to participate in an administrative remedy or other grievance process voluntarily established by the state. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to [prison] grievance procedures or access to any such procedure voluntarily established by a state.") (citations omitted). Accordingly, the Court finds that Savoy has failed to state a claim for retaliation.

Further, prisoners have no constitutional right to job opportunities while incarcerated. Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir. 1980); Awalt v. Whalen, 809 F.Supp. 414, 416-17 (E.D.Va. 1992). Thus, a prisoner has no constitutionally-protected liberty interest in any particular job assignment or work detail. Johnson v. Knable, 862 F.2d 314 (4th Cir. 1988) (per curiam) ("[P]rison work assignments are matters within the discretion of prison officials, and denial of employment does not, in and of itself, abridge any constitutional right of the inmate."). "[T]he classifications and work assignments of prisoners . . . are matters of prison administration, within the discretion of the prison administrators . . . ." Altizer v. Paderick, 569 F.2d 812, 813 (4th Cir. 1978). Therefore, Savoy's claim for denial of the opportunity to work in a particular institutional job is not cognizable under § 1983 and will be dismissed.

### 3. ADA Claims

Finally, Savoy's ADA claims against Defendants, in their official capacities, do not survive scrutiny.[4]  Title II of the ADA, 42 U.S.C. §§ 12131 et seq., prohibits qualified individuals with disabilities from being excluded from participation in or being denied the benefits of the services, programs, or activities of a public entity. [5]  To make out a prima facie case under the Title II of the ADA, Savoy must show that: (1) he is a person with a disability as defined by statute, (2) he is otherwise qualified for the benefit in question, (3) he was excluded from the benefit due to discrimination based upon disability, and (4) the entity that provides the benefits is a public entity.  See 42 U.S.C. § 12132; Doe v. Univ. of Md. Med. Sys., 50 F.3d 1261, 1265 (4th Cir. 1995); Hallett v. New York State Dep't of Corr. Servs., 109 F.Supp.2d 190, 198 (S.D.N.Y. 2000).

Savoy's Complaint alleges that he was denied eligibility for the Vet Dog Program because he is a wheelchair-bound inmate.  The selection process for a vet dog handler position within the program is set forth in WCI ID 100.0002.5.3.04.  After an inmate submits a request slip for a VetDog Puppy Program Application, the Application is subject to a three-phase

---

[4] The Fourth Circuit has held that the ADA does not recognize a cause of action against employees in their individual capacities.  See Baird ex rel. Baird v. Rose, 192 F.3d 462, 471 (4th Cir. 1999); see also 42 U.S.C. § 12132 (providing a remedy only against a "public entity"); McNulty v. Bd. of Educ. of Calvert Cty., No. DKC-2003-2520, 2004 WL 1554401, at *6 (D.Md. July 8, 2004) ("As with Title II of the ADA, Section 504 of the Rehabilitation Act 'does not permit actions against persons in their individual capacities.'" (quoting Baird, 192 F.3d at 472)).  Therefore, Savoy's ADA claims against Defendants in their individual capacities must be dismissed.

[5] Courts (including several federal appellate courts, as well as district courts in the Fourth Circuit) have held that compensatory damages may be awarded under Title II of the ADA or the Rehabilitation Act, if a public entity "intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons."  Mark H. v. Lemahieu, 513 F.3d 922, 938 (9th Cir. 2008); accord Adams v. Montgomery Coll. (Rockville), 834 F.Supp.2d 386, 393-94 (D.Md. 2011) (applying deliberate indifference standard).

screening process. A criterion of the first-phase of the screening process includes a prohibition against inmate participation in the program if an inmate has a record of a prior registerable sex offense or domestic violence related offense. Savoy was convicted of first-degree rape in the Circuit Court for Prince George's County, Maryland and is required to register as a sex offender. Savoy is, therefore, ineligible for the program, which he acknowledges.

This prohibition, set out under the program guidelines, represents a non-discriminatory reason for barring Savoy's entry into the program.[6] There is no evidence that Savoy was discriminated against in assignment to a prison job because of a disability. See, e.g., Miller v. Hinton, 288 F.App'x 901, 902 (4th Cir. 2008) (finding that prison's alleged denial of access to colostomy bags and catheters by inmate, who was a paraplegic confined to a wheelchair who used such supplies for urinary bladder control, did not constitute disability discrimination in violation of ADA absent a showing that inmate was treated in that manner because of his disability); Spencer v. Easter, 109 F.App'x 571, 573 (4th Cir. 2004) (finding that failure to provide timely refills of prescription drugs did not amount to an ADA violation where there was no showing that it was done based on prisoner's disability). Moreover, to the extent that Savoy's alleges that his reassignment to Housing Unit Two violates the ADA, he has failed to

---

[6] In Chase v. Baskerville, , the court recognized that "in the context of state prisons, Title II validly abrogates state sovereign immunity and 'creates a private cause of action for damages against the States' only 'for conduct that actually violates the Fourteenth Amendment.'" 508 F.Supp.2d 492, 506 (E.D.Va. 2007), aff'd, 305 F.App'x 135 (4th Cir. 2008) (quoting United States v. Georgia, 546 U.S. 151, 159 (2006)). Here, for the reasons stated above, Savoy's failure to receive a job in the Vet Dog Program does not violate the Fourteenth Amendment, so his claim under Title II of the ADA likewise must be dismissed.

provide any particular facts to support his claim.[7] Accordingly, the Court will grant the Motion as to Savoy's ADA claims.

### III.   CONCLUSION

For the aforesaid reasons Defendants' Motion (ECF No. 16), construed as a motion for summary judgment, is GRANTED.[8] Judgment is entered in favor of Defendants and the Complaint (ECF No. 1) is DISMISSED. A separate order follows.

Date: September 2, 2015

/s/
_____
George L. Russell, III
United States District Judge

---

[7] Savoy does claim that he injured himself when using appliances in the recreation room while wheelchair bound and seemingly contends that the appliances were not at the correct height to be accessible to disabled inmates. Defendants affirm, however, that the depth and height of the microwave table satisfies the ADA standards for design.

[8] In light of the Court's decision, Savoy's Motion to Appoint Counsel (ECF No. 21) is DENIED.